**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on June 14, 2024**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. ____________** |
| **v.** | : | **VIOLATIONS:** |
| **YANA LEONOVA (a/k/a YANA LIAVONAVA)** | : | **18 U.S.C. § 371 (Conspiracy to Defraud the United States)** |
| **Defendant.** | : | **50 U.S.C. § 4819 (Export Control Reform Act)** |
| | : | **18 U.S.C. § 554 (Smuggling)** |
| | : | **18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering)** |
| | : | **FORFEITURE: 18 U.S.C. § 981(a)(1)(A) 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 853(p)** |

# INDICTMENT

## INTRODUCTION

The Grand Jury charges that, at times material to this Indictment:

1. Since at least May 2022, and following Russia's full-scale invasion of Ukraine in February 2022, YANA LEONOVA (a/k/a YANA LIAVONAVA) ("LEONOVA"), the defendant, conspired to circumvent and evade U.S. export laws and regulations in order to procure, sell, and ship from the United States to Russia sophisticated and sensitive aircraft equipment.

2. In the course of exporting the equipment from the United States, LEONOVA and her co-conspirators concealed and misstated the true end users and end destinations of the shipments by submitting false information on export documents; failing to file required export

documents; transshipping items through third-party countries, including Armenia; exporting items to foreign intermediary companies that then reexported the items to Russia; and using the U.S. financial system to facilitate these actions.

THE DEFENDANT AND CO-CONSPIRATORS

3. Defendant YANA LEONOVA was a Belarussian citizen residing in Russia who was the Logistics Manager for Russia-based Russian Company-1 and its affiliates. She was primarily responsible for procuring aircraft equipment on behalf of Russian Company 1.

4. "Russian Company-1," whose identity is known to the Grand Jury, was located in Moscow, Russia, with a branch office in St. Petersburg, Russia, and is an operator of private chartered aircraft, including planes and helicopters. Russian Company-1 was added to the U.S. Department of Commerce's Entity List in December 2023.

5. "Co-conspirator-1," whose identity is known to the Grand Jury, was a naturalized U.S. citizen who resides in New Jersey. Co-conspirator-1 was the founder, owner, and manager of "U.S. Company-1."

6. U.S. Company-1, whose identity is known to the Grand Jury, is registered in Teterboro, New Jersey and provides various services to aircraft operators, including supplying rotables, expendables, hardware, spares, and electronic equipment for commercial and private aircrafts manufactured by Airbus, Boeing, Bombardier, Dassault, Gulfstream, and others.

7. "Co-conspirator-2," whose identity is known to the Grand Jury, was a citizen of Armenia and the apparent operator of Armenian Company-1. Co-conspirator-2 was added to the Department of Commerce's Entity List in December 2023.

8. "Co-conspirator-3," whose identity is known to the Grand Jury, was a citizen of Armenia and a founder and director of record of Armenian Company-1. Co-conspirator-3 was

added to the Department of Commerce's Entity List in December 2023.

9. "Armenian Company-1," whose identity is known to the Grand Jury, was located in Yerevan, Armenia and was a company that U.S. Company-1 and Russian Company-1 used to transship aircraft equipment to Russia. Armenian Company-1was added to the Department of Commerce's Entity List in December 2023.

THE EXPORT CONTROL REFORM ACT

10. On August 13, 2018, the President signed into law the National Defense Authorization Act of 2019, which included the Export Control Reform Act ("ECRA"). *See* 50 U.S.C. § 4801 *et seq.* ECRA provided permanent statutory authority for the Export Administration Regulations ("EAR"), Title 15, Code of Federal Regulations, Parts 730-774.

11. ECRA provided that "the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specified activities of United States persons, wherever located, be controlled." 50 U.S.C. § 4811. To that end, ECRA granted the President the authority to "(1) control the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. 50 U.S.C. § 4812. ECRA granted to the Secretary of Commerce the authority to establish the applicable regulatory framework. 50 U.S.C. § 4813.

12. Through the EAR, the U.S. Department of Commerce's Bureau of Industry and Security ("BIS") reviewed and controlled the export from the United States to foreign destinations of certain items. In particular, BIS placed restrictions on the export and reexport of items that it determined could make a significant contribution to the military potential or nuclear proliferation of other nations or that could be detrimental to the foreign policy or national security of the United

States. Under the EAR, such restrictions depended on several factors, including the technical characteristics of the item, the destination country, the end user and the end use of the item.

13. The most sensitive items subject to EAR controls were identified on Commerce Control List ("CCL") set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1. Items listed on the CCL were categorized by Export Classification Number ("ECCNs"), each of which was subject to export control requirements depending on destination, end use and end user of the item.

14. BIS publishes the names of certain foreign persons – including businesses, research institutions, government and private organizations, individuals and other types of legal persons – that are subject to specific license requirements for the export, reexport and/or transfer (in-country) of specified items. These persons comprise the Entity List, which is found at Title 15, Code of Federal Regulations, part 774, Supplement Number 4. The persons on the Entity List are subject to individual licensing requirements and policies supplemental to those found elsewhere in the EAR, due to a determination that such persons have engaged in activities contrary to U.S. national security and/or foreign policy interests.

15. Since Russia's full-scale invasion of Ukraine on February 24, 2022, BIS has implemented a series of stringent export controls that restrict Russia's access to the technologies and other items that it needs to sustain its attack on Ukraine. As of April 8, 2022, license requirements for exports, reexports and transfers to or within Russia were expanded to cover all items on the CCL. *See* 87 Fed. Reg. 12226 (Mar. 3, 2022); 87 Fed. Reg. 22130 (Apr. 14, 2022); 15 C.F.R. § 746.8.

16. Under ECRA, it was a crime to willfully violate, attempt to violate, conspire to violate or cause a violation of any regulation, order, license or authorization issued pursuant to the

statute, including the EAR. *See* 50 U.S.C. § 4819(a)(l).

**COUNT ONE**
**Conspiracy to Commit an Offense Against the United States and to Defraud the United States, in violation of Title 18, United States Code, Section 371**

THE CONSPIRACY

17. Between at least in or about May 2022 and continuing to the present, in the District of Columbia and elsewhere, the defendant, YANA LEONOVA, and others, known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree together and with each other, to commit offenses against the United States and to defraud the United States, as follows:

a. to willfully export and cause the exportation of goods from the United States to Russia without first having obtained the required licenses from the Department of Commerce in violation of Title 50, United States Code, Section 4819, and Title 15, Code of Federal Regulations, Sections 736.2, 746.8, and 764.2;

b. to fraudulently and knowingly export and send and attempt to export and send from the United States merchandise, articles, and objects contrary to laws and regulations of the United States, and receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for exportation contrary to laws and regulations of the United States, in violation of Title 18, United States Code, Section 554;

c. to cause the transfer of funds from a place outside of the United States to a place in the United States in promotion of a specified unlawful activity, that is smuggling, in violation of Title 18, United States Code, Section 1956; and

d. to defraud the U.S. Government by interfering with and obstructing a lawful

government function, that is, the enforcement of laws and regulations controlling the export of goods from the United States, by deceit, craft, trickery, and dishonest means.

18. The allegations made in paragraphs 1 through 9 are hereby realleged and incorporated by reference herein.

GOALS OF THE CONSPIRACY

19. The goals of the conspiracy were:

a. to acquire, on behalf of entities in Russia, aircraft equipment that was manufactured and/or sold in the United States;

b. to export aircraft equipment from the United States to Russia and to Russian end users, including through intermediary destinations, such as Armenia;

c. to conceal through dishonest means the prohibited activities and transactions from detection by the U.S. Government to avoid penalties and disruption of the illegal activities;

d. to profit through these illegal activities; and

e. to undermine the efforts of U.S. Government agencies to enforce export laws and regulations by evading the prohibitions and licensing requirements of ECRA and the EAR.

MANNER AND MEANS OF THE CONSPIRACY

20. Defendant LEONOVA and other co-conspirators, known and unknown to the Grand Jury, used the following manner and means, among others, to accomplish the objects of the conspiracy:

a. LEONOVA and other co-conspirators, including Co-conspirator-1 and Co-

conspirator-2 used email and other means to communicate;

b. LEONOVA and Co-conspirator-2, among others, solicited quotes from and negotiated with Co-conspirator-1 for the procurement of aircraft equipment;

c. Co-conspirator-1 purchased items or caused items to be purchased from companies in the United States to fulfill orders from LEONOVA, including by providing false information to the U.S. companies;

d. LEONOVA and other co-conspirators, including Co-conspirator-1 and Co-conspirator-2, arranged for shipment of the aircraft equipment from the United States to transshipment points in Armenia and elsewhere, to conceal the true end users and end destinations in Russia;

e. LEONOVA and Co-conspirator-2 transferred funds for the purchase and shipment of the goods through bank accounts in Russia and Armenia to bank accounts in the United States maintained by Co-conspirator-1 and U.S. Company-1; and

f. LEONOVA and other co-conspirators caused the aircraft equipment to be exported from the United States to individuals and entities in Russia without obtaining the required licenses from the U.S. Department of Commerce.

FAILURE TO OBTAIN A LICENSE

21. During the relevant time period, the below items were identified on the CCL, classified by BIS under the corresponding ECCNs, and controlled for anti-terrorism reasons. As of February 24, 2022, an export license was required from the Department of Commerce to export or reexport each of these items to Russia.

| Exported Item | ECCN |
| --- | --- |

| | |
|---|---|
| 2 "Window LH" (P/N STA320-1-9-3); 2 "Window RH" (P/N STA320-2- 9-3) | LH Windshield: 9A991.d<br>RH Windshield: 9A991.d |
| 1 multiscan weather device (P/N 822-2256-001) | 6A998.a |
| 1 fan blade pair (P/N 363-906-002-0) | 9A991.d |
| 1 fan blade pair (P/N 363-906-002-0) | 9A991.d |

22. No person, including defendant LEONOVA, sought or obtained the required licenses from the U.S. Department of Commerce, which is located in Washington, D.C., in order to lawfully conduct the commercial transactions and related shipments and wire transfers set forth in this Indictment.

OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

23. In furtherance of the conspiracy and to achieve the objects thereof, the defendant LEONOVA and co-conspirators committed and caused to be committed the following overt acts, among others, in the District of Columbia and elsewhere:

BACKGROUND OF RELATIONSHIP

24. Prior to Russia's full-scale invasion of Ukraine in February 2022, LEONOVA – acting on behalf of Russian Company-1 – procured aircraft equipment directly from U.S. suppliers. Following Russia's full-scale invasion, LEONOVA's direct procurement activity with U.S. suppliers ceased, turning instead to Co-conspirator-1.

25. Prior to Russia's full-scale invasion of Ukraine in February 2022, an employee for Russian Company-1 told Co-conspirator-1 that Russian Company-1 was not in need of Co-conspirator-1's equipment resale services because it purchased equipment directly from the U.S. manufacturers and suppliers of the relevant aircraft and aircraft equipment for Russian Company-1's fleet.

26. In or about April and May 2022 and continuing through at least September 2023, LEONOVA and Co-conspirator-1 discussed on several occasions the applicable export restrictions

imposed on Russia and the legality of the transshipment scheme. As part of these conversations, Co-conspirator-1 and LEONOVA discussed the export restrictions put in place following Russia's full-scale invasion of Ukraine, with Co-conspirator-1 telling LEONOVA that doing business with her carried risks and that Co-conspirator-1 could not send items directly to LEONOVA in Russia because of the export restrictions. LEONOVA tried to minimize Co-conspirator-1's concerns about the illegality of their conduct, erroneously advising Co-conspirator-1 that transshipping goods through a third country made the export from the United States legal.

27. On or about May 18, 2022, Co-conspirator-1 sent an email to LEONOVA and Co-conspirator 2 with the subject line "Introduction." In the email, Co-conspirator-1 wrote, "Dear Yana [LEONOVA] and [Co-conspirator-2], I would like to make the initial introduction. Please connect over the phone and discuss the details. Please let me know if you need any additional information from me."

ORDER 50

28. On or about May 31, 2022, Co-conspirator-1 sent an email with the subject line "Invoice 50" to Co-conspirator-2. In the email, Co-conspirator-1 wrote, "[Co-conspirator-2], Attached the invoice and packing slip for Order 50. Yana [LEONOVA], will send the [purchase order] today as well. We need to process this invoice in order for me to purchase it. These are Airbus windows." Attached to this email were two attachments containing a commercial invoice and packing slip for two "Window LH" (P/N STA320-1-9-3) and two "Window RH" (P/N STA320-2-9-3), totaling $58,500 ("Order 50"). The "ship to" and "bill to" lines for these attachments listed Armenian Company-1.

29. On or about May 31, 2022, LEONOVA sent an email to Co-conspirator-2. LEONOVA wrote, "Please accept this new order from the Airline and provide an invoice for

payment." Attached to this email was a purchase order on Russian Company-1 letterhead, which listed the same quantity and part numbers as included in Co-conspirator-1's email to Co-conspirator-2. The "ship to" line listed Russian Company-1 in Moscow, Russia. The line items for both parts specified that they were for use on an Airbus A321 aircraft, two of which were a part of Russian Company-1's fleet of aircraft.

30. On or about June 1, 2022, Co-conspirator-2 replied to LEONOVA with a pro forma invoice from Armenian Company-1 to Russian Company-1 in Moscow, Russia. It listed the same parts as both the invoice from U.S. Company-1 and the purchase order from Russian Company-1. The pro forma invoice was signed by Co-conspirator-3.

31. On or about June 2, 2022, LEONOVA replied to this email chain informing Co-conspirator-2 that the bill for the order had been paid. Attached to this email were five attachments, the last of which contained a copy of a wire transfer made that same day from Russian Company-1's bank account at Russia-based Alfa-Bank to Armenian Company-1's bank account in Armenia.

32. On or about June 8, 2022, Armenian Company-1 wired $82,655 from its Armenia-based bank account to U.S. Company-1's bank account at U.S. Financial Institution-1 in New York. The details of the wire specify that the transfer was for payment of Order 50. The wire was electronically signed by Co-conspirator-3.

33. On or about June 27, 2022, Co-conspirator-1 sent an email with the subject line "Windows" to Co-conspirator-2. The body of the email contained a screen shot of a flight schedule and tracking number showing that Co-conspirator-1 would export Order 50 from the United States on or about June 30, 2022.

34. On or about June 24, 2022, Order 50 was exported from the United States to Armenian Company-1 in Armenia. Co-conspirator-1 did not identify Russian Company-1 in the

information provided to the U.S. shipping company.

35. Co-conspirator-1 caused an Electronic Export Information ("EEI") filing not to be made with respect to this shipment, despite knowing one was required.

36. On or about July 7, 2022, Order 50 was reexported by Armenian Company-1 from Armenia to Russian Company-1 in Russia.

<u>ORDER 59</u>

37. On or about June 9, 2022, Co-conspirator-1 emailed "U.S. Company-2," a Washington-based supplier of private and commercial airplane equipment, requesting a quote on part number 822-2256-001, a multiscan weather radar manufactured by a separate U.S. company. In the email, Co-conspirator-1 asked, "please let me know if this unit has dual purpose or military application." Co-conspirator-1 did not tell U.S. Company-2 that the weather radar was intended for Russian Company-1.

38. On or about June 15, 2022, Co-conspirator-1 sent an email with the subject line "Invoice - Order 56" to Co-conspirator-2. Co-conspirator-1 wrote, "[Co-conspirator-2], Please price is [*sic*] as soon as possible. This is for Yana [LEONOVA]. It's urgent!" Attached to this email was a document containing a commercial invoice for one "multiscan weather" device valued at $250,000 ("Order 59"). The "ship to" and "bill to" lines for these attachments listed Armenian Company-1.

39. On or about June 21, 2022, LEONOVA sent an email with the subject line "FW: Multiscan PN: 822-2256-001" to Co-conspirator-2. LEONOVA wrote, "Please provide the final cost for this item (approximate weight 15-20kg)." Below this request was a one-row chart describing the multiscan weather device, showing part number 822-2256-001 and a value of $295,000.

40. On or about June 22, 2022, Co-conspirator-2 replied to LEONOVA with a pro forma invoice from Armenian Company-1 to Russian Company-1 in Moscow, Russia. It listed the same part as Order 59. The pro forma invoice listed contact information for Co-conspirator-3.

41. On or about June 27, 2022, LEONOVA sent a purchase order to Armenian Company-1 and Co-conspirator-2, confirming the order of a "receiver transmitter antenna RTA-4118" with part number 822-2256-001 and price of $295,000. The purchase order noted that the equipment was for a "global 6000 RA-67241," which matches the tail number of a Bombardier Global 6000 aircraft that is in the Russian Company-1 fleet.

42. On or about June 27, 2022, Co-conspirator-1 sent several emails to Co-conspirator-2 in a thread with a subject line that referenced the invoice number for Order 59. In one of the emails Co-conspirator-1 wrote, "[Co-conspirator-2], Attached please find the invoice for Order 59. Please send the calculations to Yana [LEONOVA] as soon as possible." Attached to another email within this thread was a document titled "Invoice - $297,000 (Multyscan) (Order 59)."

43. On or about June 27, 2022, Co-conspirator-1 issued a purchase order bearing the invoice number for Order 59 to U.S. Company-2 for part number 822-2256-001 "multiscan weather radar" in the amount of $235,000. The purchase order was on U.S. Company-1 letterhead and was signed by Co-conspirator-1.

44. On or about July 1, 2022, LEONOVA emailed Co-conspirator-2 informing him that payment for the order was made. Attached to this email were three documents. The first document was a proforma invoice from Armenian Company-1 to Russian Company-1 in Moscow, Russia. The invoice contained a description of the goods, which now read "receiver transmitter antenna RTA-4118" and the part number was listed as 822-2256-001. The proforma invoice was signed by Co-conspirator-3. The third document was a copy of a wire transfer made that same day

from Russian Company-1's bank account to Armenian Company-1's bank account in Armenia.

45. On or about July 4, 2022, Armenian Company-1 wired $297,000 from its Armenia-based bank account to U.S. Company-1's bank account at U.S. Financial Institution-1 in New York. The details of the wire specify that the transfer is for Order 59.

46. On or about July 5, 2022, Co-conspirator-1 wired $235,000 to U.S. Company-2. The memo on the wire described the payment as being for "Multiscan Weather PN: 822-2256-001 (OH)."

47. On or about July 14, 2022, Co-conspirator-1 sent an email with the subject line "Order 59" to Co-conspirator-2. The body of the email contained shipping information showing that Order 59 had been exported from the United States on or about that same day. Co-conspirator-1 did not identify Russian Company-1 in the information provided to the U.S. shipping company. That U.S. shipping company had suspended service to Russia by the date of this shipment.

48. Co-conspirator-1 caused an EEI filing not to be made with respect to this shipment, despite knowing one was required.

49. On or about July 21, 2022, Order 59 was reexported by Armenian Company-1 from Armenia to Russian Company-1 in Russia.

<u>ORDER 62</u>

50. On or about July 6, 2022, Co-conspirator-1 sent an email to LEONOVA with the subject line "RFQ." Attached to the email was a U.S. Federal Aviation Administration authorized release certificate for part number 363-906-002-0, described as "blade, fan pair."

51. On or about the same day, LEONOVA forwarded this email to Co-conspirator-2 and asked him to provide the final cost.

52. On or about the same day, Co-conspirator-1 sent an email with the subject line

"Invoice 61 and 62" to Co-conspirator-2. Co-conspirator-1 wrote, "[Co-conspirator-2], Please see attached 2 invoice for Order 61 and 62 for Yana [LEONOVA]." Attached to this email were two documents, one of which was titled "Invoice - $197,500 1 unit (Order 62)." The invoice listed one item, a pair of fan blades with part number 363-906-002-0, valued at a total of $197,500, including shipping costs ("Order 62"). The "ship to" and "bill to" lines for these attachments listed Armenian Company-1.

53. On or about July 7, 2022, LEONOVA sent an email to Co-conspirator-2. LEONOVA wrote, "Send two new orders per attachments (for 2 pairs of blades, 1 pair = 2 pcs) and provide 2 separate invoices for payment." The email contained a purchase order on letterhead from Russian Company-1 in Moscow, Russia listing part number 363-906-002-0, blade, fan pair, for an A321 aircraft, valued at $194,500. According to Russian Company-1's website, Russian Company-1's fleet includes two A321 aircraft, bearing tail numbers RA-73027 and RA-73028.

54. On or about July 11, 2022, LEONOVA sent an email to Co-conspirator-2. LEONOVA wrote, "[Co-conspirator-2], half of the order is paid, payment in the attachments." Attached to this email was a pro forma invoice from Armenian Company-1 to Russian Company-1 in Saint Petersburg, Russia for one pair of fan blades, part number 363-906-002-0 and a copy of a wire transfer made that same day from Russian Company-1's bank account at Tinkoff Bank in Russia to Armenian Company-1's bank account in Armenia. The pro forma invoice was signed by Co-conspirator-3.

55. On or about July 12, 2022, LEONOVA replied to this same email chain and wrote, "the bill is paid, payment in the attachments." Attached to this email was a copy of a wire transfer record made that same day from Russian Company-1's bank account at Tinkoff Bank in Russia to Armenian Company-1's bank account in Armenia.

56. On or about July 12, 2022, Armenian Company-1 wired $100,000 from its Armenia-based bank account to U.S. Company-1's bank account at U.S. Financial Institution-1 in New York. The details of the wire specify that the transfer is for Order 62. The wire was electronically signed by Co-conspirator-3.

57. On or about the following day, Armenian Company-1 made a second payment to Co-conspirator-1 referencing the same information, in the amount of $97,500. The wire was electronically signed by Co-conspirator-3.

58. On or about August 2, 2022, Co-conspirator-1 exported Order 62 from the United States to Armenian Company-1 in Armenia. Co-conspirator-1 did not identify Russian Company-1 in the information provided to the U.S. shipping company. That U.S. shipping company had suspended service to Russia by the date of this shipment.

59. On or about August 8, 2022, Co-conspirator-1 caused a false EEI filing to be submitted with respect to this shipment that falsely identified the ultimate consignee as Armenian Company-1.

60. On or about August 31, 2022, Order 62 was reexported by Armenian Company-1 from Armenia to Russian Company-1 in Russia.

ORDER 64

61. On or about July 7, 2022, LEONOVA sent an email to Co-conspirator-2. LEONOVA wrote, "Send two new orders per attachments (for 2 pairs of blades, 1 pair = 2 pcs) and provide 2 separate invoices for payment." The email contained a purchase order on letterhead from Russian Company-1 in Moscow, Russia listing part number 363-906-002-0, blade, fan pair, for an A321 aircraft, valued at $197,500. According to Russian Company-1's website, Russian Company-1's fleet includes two A321 aircraft, bearing tail numbers RA-73027 and RA-73028.

62. On or about July 7, 2022, Co-conspirator-1 sent an email with the subject line "Order 64" to Co-conspirator-2. Attached to the email was a commercial invoice on U.S. Company-1 letterhead listing one item, a pair of fan blades with part number 363-906-002-0, valued at $200,500, including shipping costs ("Order 64"). The "ship to" and "bill to" on these attachments listed Armenian Company-1.

63. On or about July 13, 2022, LEONOVA sent an email to Co-conspirator-2. LEONOVA wrote, "[Co-conspirator-2] part of the bill is paid." Attached to this email was a pro forma invoice from Armenian Company-1 to Russian Company-1 in Saint Petersburg, Russia for one pair of fan blades, part number 363-906-002-0, and a copy of a wire transfer from Russian Company-1's bank account at Tinkoff Bank in Russia to Armenian Company-1's bank account in Armenia. The pro forma invoice was signed by Co-conspirator-3.

64. On or about July 14, 2022, Armenian Company-1 wired $100,500 from its Armenia-based bank account to U.S. Company-1's bank account at U.S. Financial Institution-1 in New York. The details of the wire specify that the transfer is "for fan blade, proforma invoice 7722-06/07/2022" and referenced Order 64. The wire was electronically signed by Co-conspirator-3.

65. On or about July 18, 2022, LEONOVA replied again to the original payment confirmation email and wrote, "the second payment for the blades has been made." Attached to this email was a copy of a wire transfer made that same day from Russian Company-1's bank account at Tinkoff Bank in Russia to Armenian Company-1's bank account in Armenia.

66. On or about July 19, 2022, Armenian Company-1 wired $100,000 from its Armenia-based bank account to U.S. Company-1's bank account at U.S. Financial Institution-1 in New York. The details of the wire specify that the transfer was "for fan blade, proforma invoice

7722-06/07/2022" and referenced Order 64. The wire was electronically signed by Co-conspirator-3.

67. On or about August 19, 2022, Co-conspirator-1 exported Order 64 from the United States to Armenian Company-1 in Armenia. Co-conspirator-1 did not identify Russian Company-1 in the information provided to the U.S. shipping company. That U.S. shipping company had suspended service to Russia by the date of this shipment.

68. On or about August 17, 2022, Co-conspirator-1 caused a false EEI filing to be submitted with respect to this shipment that falsely identified the ultimate consignee as Armenian Company-1.

69. On or about August 31, 2022, Order 64 was reexported by Armenian Company-1 from Armenia to Russian Company-1 in Russia.

(**Conspiracy to Commit an Offense Against the United States and to Defraud the United States**, in violation of Title 18, United States Code, Section 371.)

**<u>COUNTS TWO through FIVE</u>**

**(Export Control Reform Act, in violation of Title 50, United States Code, Section 4819)**

70. The factual allegations in paragraphs 1 through 9 and 17 through 69 of this Indictment are hereby realleged and incorporated by reference herein.

71. On or about the dates listed for each count, in the District of Columbia and elsewhere, YANA LEONOVA and others known and unknown to the Grand Jury, did knowingly and willfully violate Title 50, United States Code, Section 4819, by exporting, attempting to export, and causing the export and attempted export of goods, as listed below, to Russia, without first having obtained authorization or a license from the U.S. Department of Commerce.

| Count | Approx. Date of Export | Description of Item(s) |
|---|---|---|
| 2 | June 24, 2022 | 2 "Window LH" (P/N STA320-1-9-3); 2 "Window RH" (P/N STA320-2- 9-3) |
| 3 | July 14, 2022 | 1 multiscan weather device (P/N 822-2256-001) |
| 4 | August 2, 2022 | 1 fan blade pair (P/N 363-906-002-0) |
| 5 | August 19, 2022 | 1 fan blade pair (P/N 363-906-002-0) |

(**Export Control Reform Act**, in violation of Title 50, United States Code, Section 4819)

**COUNTS SIX through NINE**

**(Smuggling Goods from the United States, in violation of Title 18, United States Code, Section 554)**

72. The factual allegations in paragraphs 1 through 9 and 17 through 71 of this Indictment are hereby realleged and incorporated by reference herein.

73. On or about the dates listed for each count, in the District of Columbia and elsewhere, the defendant, YANA LEONOVA, fraudulently and knowingly caused the export and sending from the United States of the merchandise, articles, and objects as identified in each count, contrary to the laws and regulations of the United States, to wit, Title 50, United States Code, Section 4819 and the EAR, and fraudulently and knowingly facilitated the transportation, concealment, and sale of such merchandise, articles, and objects, prior to exportation, knowing the same to be intended for export contrary to such laws and regulations of the United States.

| Count | Approx. Date of Export | Description of Item(s) |
|---|---|---|
| 6 | June 24, 2022 | 2 "Window LH" (P/N STA320-1-9-3); 2 "Window RH" (P/N STA320-2- 9-3) |
| 7 | July 14, 2022 | 1 multiscan weather device (P/N 822-2256-001) |
| 8 | August 2, 2022 | 1 fan blade pair (P/N 363-906-002-0) |
| 9 | August 19, 2022 | 1 fan blade pair (P/N 363-906-002-0) |

(**Smuggling goods from the United States**, in violation of Title 18, United States Code, Section 554.)

**COUNT TEN**

**(Conspiracy to Commit Money Laundering, in violation of Title 18, United States Code, Section 1956(h))**

74. The factual allegations in paragraphs 1 through 9 and 17 through 73 of this Indictment are hereby realleged and incorporated by reference herein.

75. Beginning on or about the dates specified below, in the District of Columbia and elsewhere, the defendant, YANA LEONOVA, and others known and unknown to the Grand Jury, within the venue of the United States District Court for the District of Columbia, did knowingly, combine, conspire, confederate, and agree with each other, and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1956(a)(2)(A), by transporting, transmitting, and transferring monetary instruments and funds to and through a place in the United States from and through a place outside the United States, and from and through a place in the United States to and through a place outside the United States, to wit, Armenia, with the intent to promote the carrying on of a specified unlawful activity, that is, violations of 18 U.S.C. Section 554.

GOALS OF CONSPIRACY

76. The goals of the conspiracy were:

a. To promote the conspirators' illegal business transactions;

b. To conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of illegal business transactions; and

c. To illegally enrich the conspirators.

MANNER AND MEANS OF CONSPIRACY

77. At all relevant times during the conspiracy, Russian Company-1 maintained bank accounts in Russia at Alfa-Bank and Tinkoff Bank, each of which financial institutions were

designated as Specially Designated Nationals by the U.S. Department of the Treasury, Office of Foreign Assets Control on April 6, 2022 and July 20, 2023, respectively.

78. At all relevant times during the conspiracy, Armenian Company-1 maintained bank accounts in Armenia at "Armenian Financial Institution-1."

79. At all relevant times during the conspiracy, Co-conspirator-1 and U.S. Company-1, maintained bank accounts at the New York branch of U.S. Financial Institution-1.

80. Armenian Company-1's bank accounts in Armenia were used on at least six separate occasions to wire transfer funds into or through the United States in exchange for goods smuggled from the United States.

81. On or about June 8, 2022, U.S. Financial Institution-1, located in the United States, received $82,655 from Armenian Financial Institution-1 in Armenia. The originator of the transfer was Armenian Company-1 and the beneficiary was the account for U.S. Company-1 at U.S. Financial Institution-1. The details of the wire specify that the transfer was for payment of Order 50. The ultimate source of these funds for Order 50 was LEONOVA through Russian Company-1.

82. On or about July 4, 2022, U.S. Financial Institution-1, located in the United States, received $297,000 from Armenian Financial Institution-1 in Armenia. The originator of the transfer was Armenian Company-1 and the beneficiary was the account for U.S. Company-1 at U.S. Financial Institution-1. The details of the wire specify that the transfer was for payment of Order 59. The ultimate source of these funds for Order 59 was LEONOVA through Russian Company-1.

83. On or about July 12, 2022, U.S. Financial Institution-1, located in the United States, received $100,000 from Armenian Financial Institution-1 in Armenia. The originator of the

transfer was Armenian Company-1 and the beneficiary was the account for U.S. Company-1 at U.S. Financial Institution-1. The details of the wire specify that the transfer was for payment of Order 62.

84. On or about July 13, 2022, U.S. Financial Institution-1, located in the United States, received $97,500 from Armenian Financial Institution-1 in Armenia. The originator of the transfer was Armenian Company-1 and the beneficiary was the account for U.S. Company-1 at U.S. Financial Institution-1. The details of the wire specify that the transfer was for payment of Order 62. The ultimate source of all funds for Order 62 was LEONOVA through Russian Company-1.

85. On or about July 14, 2022, U.S. Financial Institution-1, located in the United States, received $100,500 from Armenian Financial Institution-1 in Armenia. The originator of the transfer was Armenian Company-1 and the beneficiary was the account for U.S. Company-1 at U.S. Financial Institution-1. The details of the wire specify that the transfer was for payment of Order 64.

86. On or about July 19, 2022, U.S. Financial Institution-1, located in the United States, received $100,000 from Armenian Financial Institution-1 in Armenia. The originator of the transfer was Armenian Company-1 and the beneficiary was the account for U.S. Company-1 at U.S. Financial Institution-1. The details of the wire specify that the transfer was for payment of Order 64. The ultimate source of all funds for Order 64 was LEONOVA through Russian Company-1.

(**Laundering of Monetary Instruments**, in violation of Title 18, United States Code, Section 1956(h).)

## FORFEITURE NOTICE

87. The allegations contained in Counts One through Ten of this Indictment are hereby

realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 28, United States Code, Section 2461(c).

88. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of violations of ECRA, Title 50, United States Code, Section 4819; and Smuggling, Title 18, United States Code, Section 554, Defendant LEONOVA shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violation(s). The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which constitutes, or is derived from proceeds traceable to this offense.

89. The allegations contained in Counts One through Ten of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1). Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956, Defendant LEONOVA shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which constitutes, or is derived from proceeds traceable to this offense.

90. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

Matthew M. Graves (by TRE)

Attorney of the United States in
and for the District of Columbia