**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No.: 24-cr-421 (LLA)** |
| **YANA LEONOVA** | : | |
| **(A/K/A YANA LIAVONAVA)** | : | |
| | : | |
| **Defendant.** | : | |

# **<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. For the reasons stated below, the government recommends that the Court impose a sentence of 37 months of imprisonment, followed by 36 months of supervised release, and a Sentencing Guidelines fine. Specifically, should the Court not apply an adjustment under U.S.S.G. § 3B1.2(b), the government recommends a sentence at the low end of the Sentencing Guidelines range of 37-46 months; and should the Court apply an adjustment under U.S.S.G. § 3B1.2(b), the government recommends a sentence within the Sentencing Guidelines range of 30-37 months.

## **I. FACTUAL BACKGROUND**

Leonova and her co-conspirators built and executed an international procurement network designed to disguise the Russian destination of controlled U.S. goods. The scheme began at least in May 2022, when Leonova and her co-conspirators based in the United States ("Co-Conspirator A") and Armenia ("Co-Conspirator B") began to coordinate the purchase, export, and transshipment of millions of dollars of U.S.-origin aviation equipment from U.S.-based sellers.

On or about May 18, 2022, Co-Conspirator A sent an email with the subject line

"Introduction" to Co-Conspirator B and LEONOVA. In the email, Co-Conspirator A wrote, "Dear Yana [LEONOVA] and [Co-Conspirator B], I would like to make the initial introduction. Please connect over the phone and discuss the details. Please let me know if you need any additional information from me." This introduction set in motion the scheme to evade U.S. export controls implemented in the wake of Russia's invasion of Ukraine in February 2022. Leonova, Co-Conspirator A, and Co-Conspirator B each played a unique and essential role in the execution of the evasion scheme, which ultimately resulted in dozens of items being shipped to Russia and millions of dollars paid in return. The investigation has identified that there were at least 28 exports with an approximate reported value on the shipping paperwork of over $2,300,000 between approximately May 2022 to December 2022, and records show that the co-conspirators paid Co-Conspirator A over $3,300,000.

Of the dozens of shipments that ultimately were exported to Russia pursuant to Leonova and her co-conspirators' evasion scheme, the Statement of Offense focused on four transactions that underpinned the substantive counts in the Indictment. These transactions – a fraction of the total shipments sent to Russia by this conspiracy – served as clear examples of the sophistication of Leonova and her co-conspirators and the equal role that each played in the conspiracy.

Across each of the transactions, the same pattern emerged. Leonova, the "Logistics Manager" for her Russian employer, a private charter airline operating from Russia, would coordinate with Co-Conspirator A in the United States to discuss and order the component needed by her employer. Once the information was set, Leonova would place the order with Co-Conspirator B and his company in Armenia, who would then forward the order – under the Armenian company's letterhead – to Co-Conspirator A for fulfillment with U.S.-origin components. Leonova and her co-conspirators then coordinated to export the components to

Russia, passing through Armenia on the way.

Of course, the evasion scheme was not free. Following the successful purchase and export of the components from the United States, Leonova caused her Russian employer to remit payment for the components. Such payments were laundered through the international financial system in promotion of the illicit scheme, finally settling in Co-Conspirator A's bank account in the United States.

These steps were part of a broader conspiracy to supply the Russian aviation sector with U.S.-origin aviation equipment after Russia's February 2022 invasion of Ukraine, a period when U.S. export controls on Russia were at their most restrictive in decades.

## II. GUIDELINES CALCULATION

As noted in the PSR, the base offense level for a violation of ECRA is 26. PSR ¶ 62; *see also* U.S.S.G. § 2M5.1(a)(1). This reflects the application of the substantive offense guideline for evasion of export controls that constitute national security controls, U.S.S.G. § 2M5.1(a)(1). The PSR then applies a three-level reduction for acceptance of responsibility and a two-level reduction under the "zero-point offender" provision, U.S.S.G. § 4C1.1(a)–(b), for a total offense level of 21. PSR ¶¶ 68-71. Since the defendant falls under Criminal History Category I, her advisory guideline range is 37-46 months.

The parties have agreed to litigate the application of a minor participant adjustment under U.S.S.G. § 3B1.2(b), which could result in an additional 2-point reduction. However, for the reasons set out below, the Government does not believe such a reduction is warranted in this case, where each of the participants in the conspiracy played an essential and independent role (whether in purchasing, procurement, or logistics). The PSR agrees with the government's view that no adjustment is warranted. PSR ¶ 58.

## III. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The government respectfully submits that a sentence of 37 months, regardless of whether an adjustment under U.S.S.G. § 3B1.2 is applied, is appropriate. The sentencing factors articulated in 18 U.S.C. § 3553(a) underscore the need for a multi-year sentence.

### A. Nature and Circumstances of the Offense

Leonova's offenses were deliberate, calculated, and highly sophisticated violations of U.S. export control laws. She knowingly caused the purchase and export of dozens of aircraft components to directly benefit her Russian employer. She and her co-conspirators then laundered her employer's funds through the U.S. financial system to promote their illicit activity.

Leonova's actions were not a one-off transaction or a misunderstanding of Department of Commerce licensing requirements. She was experienced in the purchase and export of U.S.-origin components, having overseen the procurement of such components for her employer prior to Russia's invasion of Ukraine in February 2022. This expertise in the procurement of such components is exemplified by the change in her procurement activities following the February 2022 invasion. Instead of purchasing directly from U.S. suppliers, Leonova and her Russian employer began using Co-Conspirator A's U.S. company and transshipment companies in third countries, including Co-Conspirator B's Armenian company, to procure U.S. commodities. The scheme was designed to evade detection by U.S. authorities and the licensing apparatus intended to prevent precisely this kind of transfer.

In the context of ongoing hostilities in Ukraine, it is important to understand the clientele of Leonova's Russian employer. Aircraft operated by Leonova's employer – and kept airworthy by Leonova's actions – have been used by sanctioned Russian government officials and oligarchs in the course of their official duties, including Andrey Vorobyov (the governor of the Moscow

Oblast) and Viktor Yanukovych (the former president of Ukraine). In fact, based on open-source reporting and flight tracking data, an aircraft operated by Leonova's Russian employer transported Yanukovych to Belarus in the early days of the Russian invasion, reportedly to be installed as the president of Ukraine after Russia's overthrow of the legitimate and democratically elected Ukrainian government headed by president Volodymyr Zelenskyy.

**B. History and Characteristics of the Offender**

Under 18 U.S.C. § 3553(a)(1), the Court must consider "the history and characteristics of the defendant."

The PSR confirms that the defendant has no prior criminal convictions and qualifies as a "zero-point offender." PSR ¶ 54. While the absence of prior convictions is noted, it must be weighed against the seriousness of the instant offense, which involved deliberate conduct to evade U.S. export controls and facilitate transactions with a sanctioned and adversarial foreign power. This was not an impulsive or isolated act, but rather a calculated scheme that required planning and persistence.

The defendant's personal history reflects a difficult but generally stable environment. Leonova benefitted from higher education, including bachelor's and master's degrees from Russian and Kazakh institutions of higher education. She also enjoyed relatively stable employment that does not appear to have been based off sales or commissions for continued employment. These advantages highlight that her criminal conduct was not the product of deprivation or lack of opportunity. She had every reason and ability to comply with the law, yet she chose to engage in conduct that undermines U.S. national security interests. Her decision to engage in criminal conduct was not born out of necessity, but rather out of greed.

Unlike defendants whose criminal conduct may be intertwined with addiction, untreated health issues, or economic desperation, Leonova cannot point to such factors to explain her criminal conduct. Her offense reflects a conscious decision to violate the law despite having the capacity and opportunity to comply with it.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

Congress has made clear that offenses involving the unlawful export of goods to sanctioned nations are serious crimes. The Sentencing Commission similarly recognizes this in setting a high base offense level under U.S.S.G. § 2M5.1(a)(1). These policy choices reflect the reality that violations of export control and sanctions regimes are threats to U.S. national security and, in the case of Russia, threats to international order.

A sentence within the advisory range is necessary to reflect that seriousness. The defendant's conduct was deliberate, sustained, and calculated. As discussed *supra*, this was a knowing effort to circumvent laws designed to prevent sensitive goods from reaching a hostile foreign power.

Export control and sanctions regimes are only as strong as the willingness of individuals to abide by them. When exporters disregard those rules without adequate consequence, others are invited to do the same. That perception would weaken deterrence and diminish respect for the rule of law. A sentence that reflects the seriousness of the offense, however, reinforces the principle that national security laws are not optional and that those who choose to ignore them, as Leonova has done, will face proportionate consequences.

Finally, a Guidelines-range sentence ensures just punishment. It balances the defendant's acceptance of responsibility and lack of prior criminal history with the gravity of conspiring to

supply a sanctioned adversary. In doing so, it fulfills the Court's obligation to impose punishment that is fair, proportionate, and consistent with the seriousness of the offense.

**D. The Need to Avoid Unwarranted Sentencing Disparities**

The proposed 37-month sentence aligns with, and in many cases is more lenient than, the punishment imposed in numerous analogous cases.

In *United States v. Park*, No. 1:17-cr-00228 (D.D.C.), the defendant was convicted under the Arms Export Control Act for conspiring to export controlled defense-related software to South Korea without a license.[1] The court applied U.S.S.G. § 2M5.1 and imposed a custodial sentence of 21 months. *See id.*, Judgment (D.D.C. 2018). Notably, the goods in *Park* were destined for South Korea, a U.S. ally, and the conduct did not occur during wartime. Yet the court still imposed a term of imprisonment, recognizing that violations of export control laws inherently undermine U.S. national security and foreign policy. This case illustrates that custodial sentences are the norm even where the unlawful exports are directed to friendly nations. By comparison, Leonova's conduct of exporting goods to Russia, a sanctioned adversary actively engaged in hostilities, presents a far more serious threat. If a 21-month custodial sentence was warranted in *Park* for exports to an ally, a Guidelines-range sentence is plainly justified here, where the destination was an adversary, the Russian company that benefited from the components placed them in aircraft to further the affairs of the adversary, and the national security stakes are significantly higher.

In *United States v. Patsulya*, No. 2:23-cr-00770 (D. Ariz.), the defendant pleaded guilty to conspiring to export controlled aircraft components to Russia without a license, in violation of ECRA, as well as money laundering. Patsulya and his co-conspirators used shell companies,

---

[1] https://www.justice.gov/usao-dc/pr/us-citizen-sentenced-21-months-prison-scheme-unlawfully-export-stolen-us-technology.

offshore accounts, and false documentation to conceal the true destination of Boeing 737 brake systems bound for Russian buyers, who were primarily commercial airline companies. The court applied U.S.S.G. § 2M5.1, imposed enhancements for leadership and sophistication, and sentenced Patsulya to 70 months' imprisonment.[2] By comparison, Leonova likewise conspired to export goods to Russia, which involved the same types of goods, and the company that benefited from such procurement provided services to other sanctioned Russian individuals. To impose a non-custodial or below-Guidelines sentence here would create an unwarranted disparity with *Patsulya*, where the court imposed nearly six years' imprisonment for similar conduct.

In *United States v. Goltsev & Nasriddinov*, No. 1:23-mj-00956 (E.D.N.Y.), the defendants, Nikolay Goltsev and Salimdzhon Nasriddinov conspired to export U.S.-manufactured electronics to sanctioned Russian companies. Using Brooklyn-based front companies, they routed shipments through intermediaries in Turkey, Hong Kong, India, China, and the UAE before delivering them to Russia. Some of the components were later recovered in Russian weapons platforms and signals intelligence equipment deployed in Ukraine, including drones, helicopters, and missile systems. To impose a non-custodial or below-Guidelines sentence here would create an unwarranted disparity with *Goltsev*, where the court imposed a 40-month prison term for similar conduct, which was one month shy of the high end of the Guideline range in that case.[3]

In *United States v. Bence Horvath*, No. 24-cr-00401 (D.D.C.), the defendant conspired to export U.S.-origin communication devices to Russia.[4] Like Leonova, Horvath used a web of front

---

[2] https://www.justice.gov/opa/pr/leader-export-control-evasion-scheme-sentenced-70-months-prison.

[3] https://www.justice.gov/usao-edny/pr/canadian-national-sentenced-40-months-prison-multi-million-dollar-export-control.

[4] https://www.justice.gov/usao-dc/pr/hungarian-spanish-citizen-sentenced-scheme-export-us-military-grade-radios-russian.

companies in an attempt to purchase and export these communication devices to Russia. However, unlike Leonova, Horvath's attempt to procure these items did not succeed. Leonova, on the other hand, successfully conspired in the purchase and export of dozens of aviation components to Russia valued in the aggregate in the millions of dollars. To impose a non-custodial or below Guidelines sentence here would create an unwarranted disparity with *Horvath*, where the court imposed a 31-month prison term for less serious or widespread conduct.

**IV. The Role Adjustment and Its Sentencing Implications**

Leonova does not qualify for the 2-point minor participant adjustment under U.S.S.G. § 3B1.2(b), which the PSR correctly determined. PSR ¶¶ 58, 116.

Leonova was a principal actor in the unlawful scheme to smuggle U.S. aircraft parts to Russia, in violation of U.S. export control laws. There were three primary actors in the scheme: the buyer in Russia (Leonova), the supplier in the United States (Co-Conspirator A), and the transhipper in Armenia (Co-Conspirator B). All three of them worked together to move U.S. controlled goods and money illicitly. Leonova participated in devising the conspiracy to unlawfully transship U.S.-origin goods through Armenia for ultimate receipt by the Russian aircraft company where Leonova worked as a Logistics Manager engaged in the procurement of aviation components. Leonova regularly communicated with her co-conspirators and submitted the purchase orders for the U.S.-origin goods. Each unlawful procurement began with Leonova requesting the items from her co-conspirators. She also coordinated the transfer of funds from the Russian aircraft company. She understood the scope and structure of this criminal activity and pleaded guilty to knowingly and willfully participating in this unlawful scheme. She also benefited from this criminal activity because she was able to maintain her job at the Russian aircraft company for her role in purchasing these goods. Leonova played a critical role in this scheme and is not

substantially less culpable than her co-conspirators. Leonova, therefore, was not a minor participant under U.S.S.C. § 3B1.2(b).

**V. CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence of 37 months of imprisonment, a fine, and 36 months of supervised release. Such a sentence will appropriately reflect the seriousness of the offense, the defendant's acceptance of responsibility, and the need to deter others while avoiding unwarranted disparities.

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:

*/s/ Emma Ellenrieder*
Emma Dinan Ellenrieder
Assistant United States Attorney
D.C. Bar No. 1015108
National Security Section
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2656
Emma.Ellenrieder2@usdoj.gov

JOHN EISENBERG
Assistant Attorney General for
National Security

/s/ *Sean R. Heiden*__________
Sean R. Heiden
Deputy Chief
D.C. Bar No. 1617636
U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
(202) 514-8106
sean.heiden2@usdoj.gov